Frank BROOKS, Fernando Vitelli, Patricia Vitelli, Edward Turner, and Anne Turner, Appellants,

v.

John H. NACRELLI, Mayor of the City of Chester, Pennsylvania, et al.

No. 17659.

United States Court of Appeals
Third Circuit.
Argued May 5, 1969.
Decided June 25, 1969.

Stuart S. Bowie, Philadelphia, Pa., for appellants.

Guy G. deFuria, deFuria & Larkin, Chester, Pa., for Eyre & Chester City Republican Committee.

Philip A. McMunigal, Jr., deFuria & Larkin, Chester, Pa., for Nacrelli and police defendants.

Joseph F. Battle, Chester, Pa., for police defendants.

Before McLAUGHLIN, KALODNER and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM:

The appellant plaintiffs, residents and registered voters of Chester, Pennsylvania, filed a class action below seeking a declaratory judgment and injunctive relief against partisan political activity by members of the Chester Police Department. Count I of the Complaint alleged violation of (1) sections of the Civil Rights Act [1] prohibiting intimidation of voters; (2) First Amendment rights of free political expression; and (3) Fourteenth Amendment "equal protection" rights. Count II alleged violations of the federal Hatch Act [2] by defendant members of the Chester Police Department.

The Complaint, in broad outline alleged that twenty-two members of the Chester Police Force, named as defendants, are Republican Party committeemen; many of them electioneer in the vicinity of polling places on Election Day and as a result voters are intimidated; and the political activities of the policemen are sanctioned by the defendant Mayor of Chester and its chief of police and the defendant Chairman of the Chester Republican Executive Committee.

The plaintiffs filed a motion for a preliminary injunction October 22, 1968, the day the Complaint was filed. Hearing was had on that motion on October 28, 1968. Plaintiffs presented the testimony of eleven witnesses, including the defendants Nacrelli, Bail and Eyre. Testimony for five additional witnesses was stipulated.

When the plaintiffs rested their case, counsel for the defendant Chester Republican Executive Committee and its chairman Joseph Eyre, orally moved "that the application for *preliminary injunction* as far as Mr. Eyre is concerned and so far as the Republican Executive Committee is concerned be dismissed. * * *" (Emphasis supplied.)

At that point, counsel for all the other defendants stated:

"If the Court please, I would like to make a *similar* motion on behalf of Mayor Nacrelli, Chief Bail and also the rest of the policemen who are named defendants." (Emphasis supplied.)

The defense called a single witness who testified with respect to Count II of the Complaint alleging violations of the Hatch Act.[3]

---

1. 42 U.S.C.A. §§ 1971(b), 1983, 1985(3).

2. 5 U.S.C.A. § 1502(a).

3. The testimony of this witness established that the Chester 1966 budget allocated $1,130,753 to its Police Department and

■■■■■■

The parties then presented oral argument on the two defense motions "that the application for preliminary injunction * * * be dismissed." When they concluded, the District Court said in relevant part:

"I am going to make my decision right now. * * *

"This case is rather imminent because of the election coming up a week from tomorrow, and if I deny the request for the preliminary injunction, why, obviously it can't be resolved during that time. *For future purposes, the plaintiffs may do as they see fit and obtain a permanent injunction.*

"I will start out by saying this, that the request for a preliminary injunction is denied. The motions to dismiss are granted.

"Now, I base that on the following facts: In the first instance, I have heard no evidence whatsoever which convinces me that in any way any of these police officers, the Mayor, the Chairman of the Chester City Republican Executive Committee or any member of that committee or anyone else coerced or intimidated anyone in any election that has been mentioned in this court. * * *

"I will say parenthetically that in the case of Captain Morelli there might be sufficient evidence to raise a doubt, particularly in view of the testimony that he opened the polling place in the morning and closed it at night. This is obviously a case in equity, and I don't think that testimony would even carry the burden in a routine civil case.

"There is little more that I can say concerning the facts. There just simply aren't any facts on which we could order the very unusual relief of a preliminary injunction. All counsel present are well aware of that. We don't issue a preliminary injunction unless we have strong evidence.

that only $252 of federal funds was received by Chester that year for the pur-

"There is no evidence before me of irreparable harm. There is no evidence before me that the plaintiffs, if they were permitted to proceed, would have more than a strong possibility of recovering. There is no evidence before me particularly that they do not have an adequate remedy at law. * * *

"I wish to make it perfectly clear that I am not condoning or approving anything that was done. As a matter of fact, I don't know precisely what was done because there is insufficient evidence before me, but so far as I can determine from the evidence, not one of these defendants has violated the law in any respect. Therefore, *the petition and motion for preliminary injunction will be denied.*" (Emphasis supplied.)

Court was then adjourned. Following adjournment, the Clerk of the District Court made the following docket entry:

"1968

"Oct. 28 Hearing re: Preliminary injunction. Argued re: deft's oral motion to dismiss.—C.A.V.

The court makes oral findings of fact and conclusions of law: and orders that the petition for injunction is denied, and the motion to dismiss is granted."

The Docket discloses these further entries:

"Nov. 4 Answer of J. L. Eyre, etc. filed.

"Nov. 12 Answer of John H. Nacrelli et al. filed.

"Nov. 12 Case Listed for Trial.

"Nov. 15 Transcript of 10/28/68 filed.

"Nov. 26 Notice of Appeal of plaintiffs, filed. * * *"

It must be noted at this juncture that the District Court wrote to plaintiffs' counsel on November 8, 1968 advising him in substance that it had held the defendants' motions to dismiss "under ad-

chase of some special police photographic equipment.

visement" and decided to grant them after the hearing on the application for a preliminary injunction and that it did not agree with the plaintiffs' contention that "the Court should not grant a motion to dismiss after the case was heard on the application for preliminary injunction." The District Court further stated in its letter that "If you wish to take an appeal, it appears to me very definitely that the record is complete."

That the defendants construed their oral motions "to dismiss" during the course of the preliminary injunction hearing to be directed to the application for the preliminary injunction is clearly indicated by the fact that in their respective Answers to the Complaint filed on November 4 and November 12 (after the entry of the October 28, 1968 docket entry) defendants separately stated that "Defendants respectfully pray this Court to dismiss this Complaint with costs on the Plaintiffs."

We are of the opinion that the District Court erred in dismissing plaintiffs' Complaint. Its action was in the nature of a grant of summary judgment. It is well-settled that successfully resisting motion for preliminary injunction where factual issues are presented does not entitle the defendant to summary judgment without opportunity to present additional evidence, if need be, on final hearing. Progress Development Corporation v. Mitchell, 286 F.2d 222, 233 (7th Cir. 1961); see, too, Capital City Gas Co. v. Phillips Petroleum Co., 373 F.2d 128 (2d Cir. 1967).

On review of the record we are of the opinion that the interests of justice and judicial economy would be most effectively served by remand of the cause to the District Court with directions to proceed *forthwith* to final hearing and decision.

Accordingly, the Order of the District Court, as reflected in the above-quoted docket entry of October 28, 1968, deny-

ing the plaintiffs' petition for injunctive relief and dismissing their Complaint, will be vacated and the cause remanded with directions to proceed in accordance with this Opinion.[4]

---

4. We call attention to the importance of a separate District Court order signed by, or at the direction of, the assigned judge, reflecting the determination made by such court after every hearing and trial.